UNIVERSAL C.I.T. CREDIT CORPORATION, A CORPORA-
TION, PLAINTIFF, v. BOROUGH OF PARAMUS, DE-
FENDANT.

Superior Court of New Jersey
Law Division

Decided February 25, 1966.

436

[redacted]

Mr. *Robert B. Silverman* argued the cause for plaintiff (*Messrs. Green and Lasky,* attorneys).

Mr. *Charles Rodgers* argued the cause for defendant (*Messrs. Breslin and Breslin,* attorneys).

BOTTER, J. S. C. Is a distraint for personal property taxes assessed before and after the recording of a chattel mortgage superior to the lien of the chattel mortgage? This is the issue raised by plaintiff's motion for summary judgment.

On January 26, 1962 the taxpayer, Mayflower Plymouth, Inc. (trading as Fletcher Motors, in Paramus, New Jersey) executed a chattel mortgage in favor of plaintiff mortgagee, Universal C. I. T. Credit Corporation. As security for its obligation to Universal, Mayflower pledged various items of personal property, such as furniture, fixtures, machinery, shop equipment, parts and accessories, and used vehicles, then owned or thereafter acquired. The mortgage was recorded on January 30, 1962 in the Bergen County Clerk's office.

In August 1963 the Borough of Paramus sought to collect from Mayflower $3,893.80 in personal property taxes and interest for the years 1960 through 1963. The assessments for these taxes were against Mayflower Plymouth Sales, Inc. in 1960, 1961 and 1962, and against Fletcher Motors in 1963, with the principal owner, Edwin Fletcher, also named in 1961 and 1962. Mayflower Plymouth Sales, Inc. had changed its name to Mayflower Plymouth, Inc. on August 24, 1956. For the purpose of this motion it will be assumed

that if the borough would otherwise prevail, the misnomer will not defeat recovery. See *R. S.* 54:4–54 and 54:4–58.

To enforce its claim for unpaid taxes the borough levied upon Mayflower's personal property. Notice was given and the distraint sale was set for August 14, 1963. Universal learned about the sale and protested to the tax officials, asserting that its chattel mortgage lien had priority over the tax claim. Notwithstanding this protest, the tax collector proceeded with the sale. To protect its interests Universal purchased the chattels for $4,700. The borough has held this money in escrow by agreement with plaintiff, pending determination of the priority claim presented here.

Universal then foreclosed its mortgage on August 23, 1963, and was the highest bidder at the foreclosure sale. At that time Mayflower owed Universal over $25,000. Universal thereafter demanded a return of the $4,700 paid on the tax sale, but the borough refused, and this action for its recovery followed. Mayflower is apparently in a state of insolvency, leaving obligations to Universal in excess of the disputed amount.

██ ██ It has long been the rule in New Jersey that the assessment of taxes does not impose a lien on property in the absence of a statute giving the assessment that effect. *Johnson v. Van Horn,* 45 *N. J. L.* 136 (*Sup. Ct.* 1883); *Linn v. O'Neil,* 55 *N. J. L.* 58 (*Sup. Ct.* 1892); *R. C. Stanhope, Inc. v. Township of North Bergen,* 129 *N. J. L.* 513 (*E. & A.* 1943); *Newark Steel Warehouse, Inc. v. Pearl Metal Products, Inc.,* 78 *N. J. Super.* 335, 346 (*Ch. Div.* 1962). The Legislature has made taxes on real property a lien on the property assessed (*N. J. S. A.* 54:5–6) and has provided that such lien shall be "paramount to all prior or subsequent alienations and descents of such lands or encumbrances thereon * * *." *R. S.* 54:5–9. No comparable provision has been made as to personal property taxes. As a result, the assessment of personal property taxes does not automatically impose a lien on the taxpayer's property. *R. C. Stanhope, Inc. v. Township of North Bergen,* and *Newark Steel Ware-*

*house, Inc. v. Pearl Metal Products, Inc., supra; Keith Machinery Corp. v. Borough of South Plainfield,* 89 *N. J. Super.* 584 (*Law Div.* 1965). The Legislature has provided other methods for the collection of personal property taxes.

By statute personal property taxes are made the personal obligation of the property owner. *N. J. S. A.* 54:4–1; and see *N. J. S. A.* 54:4–9, as amended, *L.* 1960, *c.* 51, § 7, *p.* 434. The assets of the taxpayer may be reached to meet the delinquency, and the taxpayer may be imprisoned to compel payment of the personal property tax. *R. S.* 54:4–79. But the usual course of collection is by distress and sale of "any of the goods and chattels of the delinquent in the State." *N. J. S. A.* 54:4–78. It is the distraint which is frequently said to give rise to the municipality's "lien" on the property of the taxpayer, although the statute does not use that term. See *R. C. Stanhope, Inc.* case, *supra,* 129 *N. J. L.,* at *p.* 517, where the court said, "a personal property tax or assessment does not become a lien until the statutory proceeding to enforce same is taken by levy under a distress warrant." See also *Murphy v. Jos. Hollander, Inc.,* 131 *N. J. L.* 165, 169 (*Sup. Ct.* 1943), where the court said, "A lien arises only by virtue of a levy made under a distress warrant * * *."

The question is whether the lien arising by distraint is paramount to the chattel mortgage lien. Embraced in this issue is the significance, if any, of the fact that some taxes accrued before the chattel mortgage was recorded and some accrued thereafter, and that the distraint and sale occurred before the chattel mortgage was foreclosed.

■ ■ Ordinarily, the priority of liens is determined by the date on which they attach to the property. The common law establishes liens "in the order of priority of their acquisition," that is to say, first in time, first in right. *Voorhis v. Westervelt,* 43 *N. J. Eq.* 642 (*E. & A.* 1887); *J. T. Evans Co. v. Fanelli,* 59 *N. J. Super.* 19, 25 (*Law Div.* 1959). See also *N. J. S. A.* 46:28–10, which provides that every chattel mortgage "shall be valid" against the creditors of the mortgagor and subsequent purchasers from the time

the mortgage is recorded. *R. S.* 54:4-106 does give priority to a claim for taxes against personal property in the hands of a court-appointed receiver of a corporation or assignee for the benefit of creditors. (See *Newark Steel Warehouse, Inc. v. Pearl Metal Products, Inc., supra,* holding, nevertheless, that the lien of a chattel mortgage has priority over a municipal tax claim which has not been made a lien against the property by levy under a distress warrant. 78 *N. J. Super.,* at *pp.* 345-347.) However, where a receiver or assignee for the benefit of creditors has not been appointed, there is no statute which gives priority to the lien created by distraint for personal property taxes, and in these circumstances the chattel mortgage lien should prevail. The result is consistent with the holding in *Bodell v. Real Securities Investment Company,* 89 *N. J. L.* 707 (*E. & A.* 1916). There priority was given to a chattel mortgage recorded before a distraint and sale for unpaid rent, even though rent for several months was due at the time the mortgage was recorded. The court held that the recording of the chattel mortgage prior to the issuance and levy under a warrant of distress for rent gave priority over the landlord's claim. See also *Woodside v. Adams,* 40 *N. J. L.* 417, 420 (*Sup. Ct.* 1878). As noted above, except for *R. S.* 54:4-106, which is limited in scope, there is no statute which alters this rule with respect to personal property taxes. The void stands in sharp contrast to the provision making real estate liens paramount prospectively and retrospectively. *R. S.* 54:5-9, quoted above.

It is for the Legislature to determine whether a distraint should give the tax claim preference over intervening rights of others, such as purchasers or chattel mortgagees. Good reason for not doing so is evident in the case of the ordinary purchaser of chattels who ought not be required, before making a purchase, to search for personal property taxes owed by the seller. See *R. C. Stanhope, Inc.* case, *supra,* 129 *N. J. L.,* at *p.* 516. Unlike real estate taxes, which become a lien on the property which is assessed and which is immobile,

personal property taxes do not become liens on the assessed property by virtue of the assessment. The property can be sold at any time before a distraint is made, so there is no assurance that a distraint later made will be against the property which gave rise to the tax assessment. *Mullins v. Mayor, etc., of Jersey City,* 61 *N. J. L.* 135 (*Sup. Ct.* 1897); and note also that the distraint which was once limited to property of the taxpayer located in the county was expanded by amendment in 1944 to include goods located anywhere in the State. *R. S.* 54:4–78, as amended, *L.* 1944, *c.* 134, *p.* 365. To subordinate a chattel mortgage retroactively, after a distraint is made, could expose a chatttel mortgagee to tax claims arising from assessments on other chattels, whether the taxes accrued before or after the recording of the mortgage. The chattels giving rise to the unpaid taxes may no longer be owned by the taxpayer, and the entire tax burden could be shifted to unsold chattels which are subject to the mortgage, jeopardizing its security. With good reason not to create a priority lien as to personal property taxes, the absence of a statute to this effect should not be considered an oversight. In fact, the contrasting treatment of real estate taxes may be taken as evidence of legislative intent to deny priority to the personal property tax claim.

Some doubt is cast upon this conclusion by the decision in *Township of Cranbury v. Chamberlin & Barclay,* 6 *N. J. Misc.* 39, 139 *A.* 800 (*Sup. Ct.* 1928), affirmed on opinion below 105 *N. J. L.* 236 (*E. & A.* 1928), as affected by *R. C. Stanhope, Inc. v. Township of North Bergen, supra.* In the *Cranbury* case a chattel mortgage was executed by the taxpayer and recorded in 1922. After 1924 and 1925 personal property taxes became due a distraint was made upon the property covered by the mortgage. The court held that the distraint before the foreclosure of the mortgage gave the municipality a lien superior to the chattel mortgage. The court reached this result by relying on *R. S.* 54:4–58. This statute provides that taxes and assessments will not be set aside for irregularities or defects in form, and that the tax

shall be a first lien or charge on the property and person as if legally imposed in the first place. The court later held in *Stanhope* that *R. S.* 54:4–58 has no relevance to the issue at hand. The court held that *R. S.* 54:4–58 could not make a defective assessment a first lien on property unless an assessment validly made in the first instance would have had that effect. The court in *Stanhope* expressly overruled the reliance placed on this statute in the *Cranbury* decision, calling it *dictum*. However, the court in *Stanhope* said that the priority given in *Cranbury* to a distraint for taxes over an unforeclosed chattel mortgage is "undoubtedly sound." 129 *N. J. L.*, at *p.* 516. The problem here is to determine what weight to give to this comment in *Stanhope* when *Stanhope* deprived *Cranbury* of the only statutory basis by which to reach that result.

The approval given in *Stanhope* of the result reached in *Cranbury* is itself *dictum*. *Stanhope* concerned a sale to a purchaser prior to the distraint for taxes, and *Cranbury* concerned a distraint for taxes prior to the mortgage foreclosure sale. In *Stanhope* the taxpayer sold a chattel to plaintiff when certain personal property taxes assessed against the seller were unpaid. After title was conveyed to plaintiff the municipality distrained on the property. The court held that the purchaser prevails because no lien was created by the assessment, and the distraint after a conveyance by the taxpayer could not retroactively create such a lien. Thus, the approval of the result in *Cranbury* may be viewed as basically inconsistent with the result reached in *Stanhope*.

■■ This court's view is that *Stanhope* effectively devitalizes the *Cranbury* doctrine. Shortly after *Cranbury* was decided, Vice-Chancellor Backes criticized the doctrine but felt bound to follow it. *Pasquariello v. Arena Twine and Cordage Co.*, 108 *N. J. Eq.* 491 (*Ch.* 1931). With deference to the *dictum* in *Stanhope*, that opinion actually facilitates a reexamination of the issue posed by *Cranbury*. On the basis of the principles reviewed above, the conclusion reached is that the chattel mortgage lien has priority over defendant's tax

claim, notwithstanding the distraint before foreclosure. If there are sufficient reasons for subordinating the chattel mortgage lien to a personal property tax claim, at least as to taxes owed before the recording of the chattel mortgage, those reasons must be presented to the Legislature for appropriate legislation. Without express legislative provision a distraint cannot be given priority over a chattel mortgage lien which has already attached to the taxpayer's property. See *Third Avenue Building and Loan Ass'n v. Prothero*, 124 *N. J. Eq.* 193 (*Ch.* 1938).

The motion for summary judgment in favor of the plaintiff is granted for $4,700 plus interest. See *Hudson County National Bank v. City of Bayonne*, 113 *N. J. L.* 258 (*Sup. Ct.* 1934).